### HITCHCOCK v. AMERICAN PLATE GLASS CO. et al.

(District Court, W. D. Pennsylvania. September 10, 1914.)

#### No. 12.

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—APPARATUS FOR GRINDING PLATE GLASS.

The Hitchcock patents, No. 934,442 and No. 934,612, each for a grinding apparatus, No. 1,056,415 for apparatus for applying abrasives to grinding apparatus, and No. 1,056,416 for method of applying abrasives to grinding apparatus, all having special reference to the art of grinding the surfaces of plate glass and to the grading of the sand used for such purpose, conceding their validity, are very narrow in scope and limited to the precise apparatus described. As so construed, *held* not infringed.

In Equity. Suit by Halbert K. Hitchcock against the American Plate Glass Company and James W. Cruikshank. On final hearing. Decree for defendants.

Christy & Christy, of Pittsburgh, Pa., for plaintiff.
Charles M. Clarke, of Pittsburgh, Pa., for defendants.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ORR, District Judge.    The bill charges the defendants with infringement of certain claims of four separate patents of the United States issued to and owned by the plaintiff.    These patents and the numbers of the claims alleged to be infringed are as follows:    Patent No. 934,-442, dated September 21, 1909, for grinding apparatus, claims 11, 12, and 13.    Patent No. 934,612, dated September 21, 1909, for grinding apparatus, claims 2 and 3.    Patent No. 1,056,415, dated March 18, 1913, for apparatus for applying abrasives to grinding apparatus, claims 3, 6, 9, 15, 20, and 23.    Patent No. 1,056,416, dated March 18, 1913, for method of applying abrasives to grinding apparatus, claims 1, 2 and 6. The defenses relied upon as shown in the answer, are invalidity of the patents and noninfringement.

The patents and the present case have special reference to the art of grinding the surfaces of plate glass.    The necessity of grinding plate glass arises from the fact that no known rolls which can be used to roll the molten glass into sheet form will render the glass smooth enough to take the final polish which renders it lustrous and transparent.    Grinding machinery, therefore, is employed in connection with an abrasive substance, by means of which the glass is brought to an even surface.    The abrasive substance in common use is sand, and the operation is successfully carried on by the use of a coarser sand at the beginning and progressively finer sands as the operation progresses, until the sheet of glass or the plate glass is ready for polishing, which is done with different substances.    The glass to be ground is placed and fastened upon the surface of a round table.    Above the table, and therefore above the glass, is apparatus to which is attached polishing bars, called runners, which rest loosely upon the surface of the glass. The table is whirled around at high speed, and the sand and water which are deposited on the surface of the glass are carried beneath the runners, which are rotated frictionally by the rotation of the table, and in this manner cause the sand to wear away the surface of the glass to the desired smoothness.

What has thus been briefly said is a statement, so far as it goes, of the process in use prior to the time of the application for any of the patents in suit and as it is in use to-day.    The patents have to do only with the method of applying the abrasive and conserving the same for use in repeated operations.

Long prior to the application for the patents, the abrasive was used over and over again, and methods were employed for the separation of the abrasive, so that the coarser and the finer sands might be, to some extent at least, classified or graded.    The method then ordinarily in use was as follows:    Coarse ungraded sand was shoveled into a long V-shaped trough elevated above the table and somewhat inclined thereto, from which it was washed by means of a stream of water from a hose through a smaller trough and upon the surface of the glass upon the table.    Around the table was a gutter into which the sand and water was caused to flow by the rotation of the table after it had performed its function as part of the grinding operation.    From this gutter the mixture flowed into a ditch, in which were placed several barriers, over which the water and the sand suspended therein was required to flow,

but which served to trap some of the heavier and larger grains of used sand which were precipitated on the hither side of the barrier or baffle, over which the water and the smaller grains of sand flowed into the next compartment, and so on. The ditch ended in what was called the fine sand house in a long rectangular basin or pair of basins having an overflow at the end opposite that at which the sand and water entered. These precipitated sands were taken from the different compartments of the ditch and re-used in the grinding operation as required; the coarser sands being taken immediately from the ditch to the table through the V-shaped trough, while the finer sands were kept in bins to be thrown upon the table when required in the grinding operation. Hitchcock, the plaintiff, with a view to improving the methods then in use, conceived the idea of storing the successive grades of sand in suspension in a grading tank until the time for each grade to be used, and of permitting each grade to be discharged from the tank directly upon the table as required.

In his patent No. 934,442, he states, after describing the prior methods and his general purposes:

"The apparatus comprises the usual grinding mechanism in conjunction with a grading tank adapted to separate the abrading material into its various grades, and so located as to permit of its discharge to the grinding mechanism. My grading tank is so constructed that a stream of fluid passes upwardly from the tank at a constantly decreasing velocity, thereby counterbalancing the normal downward velocity of the particles of material in the tank and holding them in suspension in predetermined positions, which positions depend upon the upward velocity of the water, the frictional surface of the particles and the weight of the particles. The particles in which the ratio of the weight to the frictional surface is largest take the lowest positions, as the normal downward velocity of a particle through the water depends upon this ratio, which ratio, in particles of the same shape and density, increases with the size of the particles. The larger and more compact particles thus come to a position of equilibrium in a stratum in the bottom of the tank, where the upward velocity is greatest, while the other particles arrange themselves in a series of strata, the ratios of weight to resistance in liquid of the particles composing which strata decrease as the distance from the bottom of the tank increases. After the material has been graded, the contents of the tank is drawn off from the bottom, thus supplying the coarsest material to the table to do the rough grinding, and, as the surface of the glass is reduced, a finer and finer quality of material is supplied, until all the material has been withdrawn from the tank, and the plate under treatment has been reduced to the required degree of smoothness."

His drawings and his expressed preference in the specification contemplate a tank having the shape of an inverted cone. The sand mixed with water flows from the gutter around the table into a sump pit, from which it is forced up into the cone through its apex, and is maintained in suspension in the cone by a jet of water forced upward through the mixture. The claims of this patent relied on are as follows:

"(11) Apparatus for supplying abrasive to grinding or smoothing mechanism, comprising, in combination with a mechanism using an abrasive with water, a grading tank in position to discharge to the said mechanism, means whereby the abrasive in the tank is separated into a plurality of grades lying at different levels and ranging from coarse to fine, and connections from the tank to the grinding mechanism arranged to automatically discharge the coarsest material to the grinding mechanism first, and subsequently the other grades in the order of the size of the particles comprising the grades.

"(12) Apparatus for supplying abrasive to grinding or smoothing mecha-

nism, comprising, in combination with a mechanism using an abrasive with water, a grading tank in position to discharge thereto, means for carrying abrasive in suspension to the tank, and means whereby the abrasive is maintained in suspension in the tank until discharged to the grinding mechanism.

"(13) Apparatus for supplying abrasive to grinding or smoothing mechanism, comprising, in combination with a mechanism using an abrasive with water, a grading tank in position to discharge thereto, means for carrying abrasive in suspension to the tank, means whereby the abrasive is maintained in suspension in the tank until discharged to the said mechanism, and means whereby the proportion of abrading material to water may be varied."

The elements of these combination claims are as follows:

Claim 11: (a) A mechanism using an abrasive with water; (b) a grading tank in position to discharge to the mechanism; (c) means whereby the abrasive is separated into grades at different levels; and (d) connections from the tank to discharge the material to the grinding mechanism in the order of the size of the particles beginning with the coarsest.

Claim 12 comprises the elements (a) and (b) of claim 11, and the additional (c) means for carrying the abrasive in suspension in the tank and maintaining the same until discharged to the grinding table.

Claim 13 contains the same combination as claim 12, with an additional element (d) means whereby the proportion of grading material to water may be varied.

Patent No. 934,612 shows an elaboration of the idea embodied in the patent just considered, and describes an organized plan for grading the abrasive and feeding it to a plurality of grinding tables. It shows pairs of grading tanks similar to the grading tanks of the other patent. It shows means of discharging the abrasive material, not only upon the grinding tables, but means for discharging the finer sand into smaller tanks or into storage boxes, as may be desired. The grading tank in the patent now under consideration is not different from the grading tank in the patent just considered. The claims of the patent No. 934,612 in dispute are as follows:

"(2) Apparatus for supplying abrasive to grinding and smoothing mechanism, comprising in combination with a mechanism using an abrasive with water, and having a drainage pit, a preliminary grading tank having an admission passage leading from the pit to the bottom of the tank, means for securing a flow of liquid up through such passage and the tank, a second grading tank in position to discharge to the said mechanism, and a passage for conducting a portion of the liquid from the first tank to the second tank.

"(3) Apparatus for supplying abrasive to grinding and smoothing mechanism, comprising in combination with a mechanism using an abrasive with water, and having a drainage pit, a preliminary grading tank having an admission passage, leading from the pit to the bottom of the tank, means for securing a flow of liquid up through such passage and the tank, a second grading tank in position to discharge to the said mechanism, means for securing an upward flow of liquid therethrough, and a passage for conducting a portion of the liquid from the first tank to the second tank."

The combination of elements in claim 2 is: (a) A mechanism using an abrasive with water and having a drainage pit; (b) a preliminary grading tank having a passage from the pit to the bottom of the tank; (c) means for securing a flow of liquid up through such passage and the tank; (d) a second grading tank in position to discharge to the mechanism; and (e) a passage from the first to the second tank.

The combination of elements in claim 3 is the same as that in claim 2, with the additional element (f) means for securing an upward flow of liquid through the secondary grading tank.

The said patents Nos. 934,442 and 934,612 may well be considered together in the light of the prior art, because the applications therefor, as well as the patents, bear even date respectively. That sand mixed with water will remain in suspension to a greater or less degree, according to the movement or agitation of the mixture, is a fact of which mankind generally have knowledge. That sand is more or less graded by settling in moving water in such manner that the heaviest particles are the first to fall, while the finest are the last to settle, must have been known to all who have been familiar with running brooks or with the sandy beaches of the ocean. Hitchcock does not, as indeed he could not, claim the discovery of such phenomenon of nature. He claims the invention of; apparatus by which such processes of nature may be controlled for a new and useful purpose in a new manner.

Taking up the elements of the several claims, in view of what has been already said, it is to be observed that: (a), the mechanism using the abrasive with water and having a drainage pit, is old. As to element (b), a grading tank, being the equivalent of the old partitioned ditch, cannot be broadly claimed, but must be limited to the form described in the patents, unless the claims further limit or enlarge its character or functions. In the first patent, we find the tank "in position to discharge to said mechanism." This language suggests an elevated position by which gravity becomes an operating force.

United States Patent to Murnane, No. 719,978, of February 3, 1903, shows grading tanks or boxes elevated above the level of the grinding mechanism by which the graded sand mixed with water may be discharged thereto. It is clear, therefore, that the grading tank of the several claims must be limited to the grading tank having the function and operation of the patent as therein specifically described. This is emphasized by consideration of element (c) of claim 11 of No. 934,442; i. e., means whereby the abrasive is separated into grades at different levels. Means for separating into different grades is old, and therefore the means described in the specification of the patent must be intended, except as limited by the words "grades of different levels." There is no way indicated in either of the patents whereby the abrasive may be kept at different levels, except by the use of the particular form of grading tank. The element (d) of claim 11, being the connection to discharge the material from the tank to the grinding mechanism, must be limited to the connections described in the specification, as other means of applying the graded material are in use. Element (c) of claim 12 must be limited to the means described in the specification, because some means of carrying and maintaining sand in suspension have always been known. Element (d) of claim 13, means whereby the proportion of sand to water may be varied, must also be limited to the means described in the specification, because other means were known and used. Patent No. 934,442 must therefore be limited to the construction therein described, except as to the form of the grading tank, whose function and use must be limited to that described in the patent.

Of patent No. 934,612, element (a), the mechanism using the abrasive

with water has a drainage pit which is old. Element (b), the grading tank, has a passage from the pit to the bottom of the tank, as in patent No. 934,442. Element (c), means for securing a flow of liquid up through said passage and the tank as securing the upward flow of liquid, is old. Element (d), a second grading tank, is but a duplication of the tank of patent No. 934,442; and element (e), a passage from one tank to another, must be deemed old, unless limited to that described in the patent. The element (f) of claim 3, being means for securing an upward flow of liquid through the second tank, must be limited to such as are shown in the patent. Patent No. 934,612 must also be limited to the construction therein described, except as to the form of the grading tanks, whose function and uses must be limited to those described in that patent.

Taking up next the patents No. 1,056,415 and No. 1,056,416, it is to be observed that the former covers an *apparatus* for applying abrasives to grinding apparatus and the latter a *method* of applying the same, which method is the one which the apparatus of the former patent is adapted to practice. The apparatus shown in the drawings of both patents is the same, and the descriptive portions of the specifications are identical. It is unnecessary to dwell upon the specifications at any great length, or to analyze severally the claims of each patent which are the subject of this litigation. It is with doubt that the court has been able to find that there has been any substantial advance over other patents of Hitchcock, two of which have been already mentioned and one of which will be hereafter referred to.

The claims of patent No. 1,056,415, which are in dispute, are as follows:

"(5) Apparatus for applying abrading material to grinding and smoothing mechanism, comprising, in combination, grinding mechanism, a preliminary grading tank arranged to receive the material from the grinding mechanism, a secondary grading tank in position to discharge to the grinding mechanism, means for producing a downward travel of the material relative to the liquid in both of said tanks, a conduit for conducting liquid and material from the preliminary grading tank and discharging the same into the secondary grading tank, and means for independently withdrawing the liquid and material from the different strata of said secondary grading tank.

"(6) In apparatus for applying abrading material to grinding and smoothing mechanism, the combination of grinding mechanism, a preliminary grading tank, a secondary grading tank, each provided with means for independently discharging material therefrom at different levels, a conduit for conducting the liquid and material from the grinding mechanism to the preliminary grading tank, a conduit for conducting the liquid and material from the preliminary grading tank and depositing the same directly in the secondary grading tank, and means for delivering material separately from different levels from the second grading tank to the grinding mechanism."

"(9) Apparatus for applying abrading material to grinding and smoothing mechanism, comprising, in combination, grinding mechanism, a preliminary grading tank arranged to receive the material from the grinding mechanism, a secondary grading tank in position to discharge to the grinding mechanism, means for maintaining the material in suspension in liquid in both of said tanks, a conduit for conducting liquid and material from the preliminary grading tank and discharging the same into the secondary grading tank, and means for independently withdrawing the liquid and material from the different strata of said secondary grading tank."

"(15) Apparatus for applying abrading material to grinding and smoothing mechanism, comprising, in combination, grinding mechanism, a grading tank,

means for maintaining the material in suspension in a liquid in said tank, and means for independently and separately withdrawing material from different levels in said tank and conducting the same to said grinding mechanism."

"(20) Apparatus for applying abrading material to grinding and smoothing mechanism, comprising, in combination, grinding mechanism, a grading tank, means for maintaining the material in suspension in a liquid in said grading tank, a conduit and means for returning the material from the grinding mechanism and discharging the same into said grading tank, and means acting simultaneously with the introduction of the material into said tank for separately and independently withdrawing material from different levels therein and conducting the same to the grinding mechanism."

"(23) Apparatus for applying abrading material to grinding and smoothing mechanism, comprising, in combination, a grading tank in position to discharge to said mechanism means for introducing a liquid containing divided material in suspension into said tank, and a liquid supply pipe extending downwardly into said tank and discharging at the bottom thereof, and an overflow pipe from the upper portion of said tank."

The claims of patent No. 1,056,416, which are in dispute, are as follows:

"(1) The method of applying abrasives to grinding and smoothing mechanism, which consist in separating the material mixed with a liquid in a suitable vessel or tank into different grades, withdrawing said grades separately and in any desired sequence from said vessel, conducting the same directly to the grinding mechanism, and returning the same to the grading vessel while still mixed with the liquid and introducing the same into the top of said vessel or tank and regrading the same.

"(2) The method of applying abrasives to grinding and smoothing mechanism, which consists in separating the material mixed with a liquid in a suitable vessel or tank into different grades, withdrawing said grades separately and in any desired sequence from said vessel, conducting the same directly to the grinding mechanism, and returning the same to the grading vessel while still mixed with the liquid and introducing the same into the top of said vessel or tank and regrading the same; said grading, regrading, and circulation being carried on in an uninterrupted cycle with the material constantly mixed with the liquid."

"(6) The method of applying abrasives to grinding and smoothing mechanism, which consists in separating the same in a suitable vessel or tank into different grades, conducting the same in a state of suspension to the grinding mechanism, regrading the used material in a separate vessel, withdrawing the finer grades in said vessel from circulation, and conducting the several coarser grades from said vessel to the first-named vessel and regrading the same; said grading, preliminary grading, regrading, and circulation being carried on in an uninterrupted cycle with the material constantly mixed with the liquid."

In the specifications of these patents the patentee states:

"In my patent No. 934,441, issued September 21, 1909, is described and claimed a certain process for grading fine material in suspension, and in my patent No. 934,612, September 21, 1909, I have illustrated and described certain apparatus for grading material, conducting the same to a grinding apparatus, and then returning it for regrading. The operation of the apparatus for grading or separating the material into grades of the present application has certain general resemblances and follows the same broad principle as that described in my patent No. 934,441, above identified."

The patent No. 934,441 was offered in evidence and throws light upon the constructions of the patents in suit. That patent is for a process of which patents No. 934,442 and No. 934,612 are for apparatus by which said process may be used. That process contemplates the

use of a single grading tank, the operation of, which is described in the patent therefor in language similar to that hereinabove quoted from the specification of patent No. 934,442. The patent No. 934,441, by its drawings and as well its specification, contemplates the withdrawal of the different grades of suspended abrasive from the grading tank at the respective levels as the same may be required. There are variations in the method of the last patent for the withdrawal of the abrasive in the manner aforesaid, which are so slight as seem to be improperly regarded as protected by the later method patent or that apparatus patent. The specifications in the later patents clearly show that the grading tank of the Hitchcock patents is the grading tank of patent No. 934,441, and no other. The duplication of grading tanks and the duplication of connections thereto and therefrom cannot give much support to the position urged by the plaintiff that the said patents are of great novelty. Expressing grave doubts of the validity of the two later patents, the court, however, is disposed to sustain them as being but very narrow in their scope and as limited to the precise apparatus, as indicated in the drawings and specifications. Having thus limited the scope of the several patents relied upon by the plaintiff, the question of infringement must be disposed of.

From all the evidence in the case, the court must find that there has been no infringement. The method and the apparatus used by the defendant is more nearly like those in use before the Hitchcock invention. According to the defendant's method, the mixture of sand and water, as it flows from the grinding table, flows into a number of settling or grading boxes; the settling of the sand according to grade being caused by the failure of the sand in suspension to flow with the water and lighter grains over partitions of various heights, so that, by reason of the partitions which disturb the direct flow of the water and sand in suspension, the heavier sands are first precipitated and the lightest sand is the last precipitated. There is no suspension or maintenance of the sand in different strata or different levels, as contemplated by Hitchcock. The sand and water from each compartment of the defendant's apparatus is pumped by an air lift pump, which is of well-known type to the place where they are required. In the defendant's apparatus, the lifting power of air forces the liquid upward through the pump from the bottom of the compartment. Because of the necessity of such a pump, the grading tanks or boxes of the defendant cannot be said to be in a position to discharge to the grinding mechanism, within the meaning of the terms of the patent. That pumps may force sand and water a long distance and to various heights has long been well known. Without undue elaboration, it is sufficient to outline the method in the apparatus of the defendant as follows:

Unused coarse sand is applied by being floated to the grinding table by means of water from a hose. That sand and water flow from the gutter around the table into the sump pit, which is one of two parts of a box some 20 feet deep, divided from the other part by a partition reaching from the bottom almost to the top of the box. The coarse sand with water can be pumped directly to the grinding table from the sump pit by means of an air-lift pump extending almost to the bottom of the pit. The sand and water flow over the top of the partition into the ad-

joining subdivision of the box, and in so flowing some of the heavier sand is left in the sump pit, while the rest is carried with the flow of water. That box with its two parts has been called, for convenience, the primary grader. After passing over the partition in the primary grader, the sand and water is pumped by a similar pump extending nearly to the bottom of the subdivision into another box containing three subdivisions, which together are called, for convenience, the secondary grader. The sand and water as it empties into the sump pit, before it mingles with the sand and water flowing over the partition dividing the primary grader, must pass directly down to within eight feet of the bottom of the sump pit before it can take the upward turn; there being a partition extending from the top of the primary grader down to within that distance from the bottom. The sand and water which is pumped from the second division of the primary grader into the secondary grader must pass toward the bottom of the secondary grader to within eight feet of said bottom before the water can take the upward turn to pass over the partition between the first and second divisions of the secondary grader. The partition between the second and third divisions of the secondary grader is much higher than the partition between the first and second divisions of said secondary grader. The surplus water containing the mud and other substances too light and unfit for use in the grinding operation passes through an outlet at the top of the third division of the secondary grader into the sewer. In each of the three divisions of the secondary grader, as well as in each of the two divisions of the primary grader, is an air lift pump. The sand in suspension in the fluid pumped from the second division of the primary grader into the secondary grader, by reason of the three divisions and the two partitions, is precipitated, in so far as it fails to pass or does pass over the partitions in the secondary grader, into three grades of sand which can be used as needed in the grinding operation. That sand settles in the several subdivisions of the graders is clear from the evidence in this case, and that it has a tendency to choke the pumps is clear; the evidence being uncontradicted that it is sometimes difficult to remove a pump because the bottom of the pump is so deeply imbedded in the sand which has been precipitated in the division with which the pump is connected. To prevent the pumps from becoming inoperative by reason of the choking of the sand, each pump is provided with a spray pipe, whereby water can be admitted into the sand at the end of the pump, thereby giving the sand such consistency that it will flow upward through the pump in the manner required. It is urged by the plaintiff that the addition of the spray pipe, as it is called, is a fact strongly indicating infringement of the process of the plaintiff, which depends upon the upward flow of water to maintain the sands in suspension at the proper levels. The court, however, cannot so find. The water introduced by the spray pipes is not sufficient to force the sand upward in the division or tank and maintain it in suspension therein, but it is sufficient to enable the starting of the pumps and of the continued action of the pumps by reason of the water which comes into the compartments with the sand from the sump pit. The application of water to disturb a body of sand is not by any means a new idea. It is a matter of common knowledge that piles are some-

times sunk in sand by the running of a stream of water beneath the piles.

The defendant's apparatus is based upon the old idea of settlement and segregation of the abrasive material. The defendants are utilizing the old sluice-box construction in a rearranged form, without any production of such upward flow of water which would prevent the desired settlement of the sands to the bottom of the several boxes where the fixed pumps are located.

The bill must be dismissed at plaintiff's costs. Let a decree be presented.